UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| ROBERT J. ALLEN,<br><br>  Plaintiff,<br><br>  v.<br><br>MICHAEL ASTRUE, Commissioner of Social Security,<br><br>  Defendant. | CASE NO. C09-5415JRC<br><br>ORDER AFFIRMING ADMINISTRATIVE DECISION |

This matter has been referred and reassigned to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(c). This matter has been fully briefed. Plaintiff brings this action pursuant to 205(g) of the Social Security Act ("the Act"), as amended, 42 U.S.C. § 405(g), to obtain judicial review of the defendant's final administrative decision.

Plaintiff raises the following issues:

(i) whether the ALJ provided specific, legitimate reasons for rejecting the medical opinion of Dr. Cotterell;

(ii) whether the ALJ improperly ignored the opinion of a nurse, Kelly Bell;

(iii) whether the ALJ properly considered the lay witness evidence; and

(iv) whether the ALJ properly rejected plaintiff's testimony.

ORDER - 1

DISCUSSION

This Court must uphold the determination that plaintiff is not disabled if the ALJ applied the proper legal standard and there is substantial evidence in the record as a whole to support the decision. Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Richardson v. Perales, 402 U.S. 389, 401 (1971); Fife v. Heckler, 767 F.2d 1427, 1429 (9th Cir. 1985). It is more than a scintilla but less than a preponderance. Sorenson v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975); Carr v. Sullivan, 772 F. Supp. 522, 525 (E.D. Wash. 1991). If the evidence admits of more than one rational interpretation, the Court must uphold the Secretary's decision. Allen v. Heckler, 749 F.2d 577, 579 (9th Cir. 1984).

After carefully reviewing the record, the court finds and orders as follows:

(1) The ALJ found plaintiff "not credible." Tr. 30. Because plaintiff's credibility plays a central role in the ALJ's decision, the court will first address plaintiff's argument that the ALJ erred in making this finding.

The court must normally defer to the ALJ in the realm of credibility determinations, which are particularly within the province of the ALJ. Andrews v. Shalala, 53 F.3d 1035, 1043 (9th Cir.1995). Nevertheless, when an ALJ discredits a claimant's subjective symptom testimony, he must articulate specific and adequate reasons for doing so. Greger v. Barnhart, 464 F.3d 968, 972 (9th Cir.2006). The determination of whether to accept a claimant's subjective symptom testimony requires a two-step analysis. 20 C.F.R. §§ 404.1529, 416.929; Smolen v. Chater, 80 F.3d 1273, 1281 (9th Cir. 1996). First, the ALJ must determine whether there is a medically determinable impairment that reasonably could be expected to cause the claimant's symptoms. 20 C.F.R. §§ 404.1529(b), 416.929(b); Smolen, 80 F.3d at 1281-82. Once

a claimant produces medical evidence of an underlying impairment, the ALJ may not discredit the claimant's testimony as to the severity of symptoms solely because they are unsupported by objective medical evidence. Bunnell v. Sullivan, 947 F.2d 341, 343 (9th Cir.1991)(*en banc*). Absent affirmative evidence that the claimant is malingering, the ALJ must provide "clear and convincing" reasons for rejecting the claimant's testimony. Smolen, 80 F.3d at 1284; Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998).

There is evidence of malingering in this case. Nevertheless, the ALJ provided clear and convincing reasons to reject plaintiff's claims regarding the severity of his limitations, and there is overwhelming evidence supporting the ALJ's finding.

First, the ALJ noted plaintiff's credibility was diminished by his denial of drug and alcohol abuse, despite evidence to the contrary. Tr. 30. For instance, in 1997 plaintiff reported to Dr. Schostal that he only drank "rarely." Tr. 20, 269. In 1999, plaintiff denied any history of drug or alcohol abuse to Dr. Olson. Tr. 273. In December 1999, plaintiff told Dr. Carvalho that he consumed an average of about one alcoholic beverage per week and that he did not use street drugs of any kind. Tr. 334.

In contrast to these statements, in 1999, Dr. Rosenfeld noted plaintiff's "need for massive and ever increasing doses of narcotics not to mention deceptive behavior," which led Dr. Rosenfeld to recommend inpatient detoxification. Tr. 289. In 1999, plaintiff tested positive for marijuana and benzodiazepine (a.k.a., Valium). Tr. 322-23. Plaintiff also received a citation for driving under the influence in 1999. Tr. 1343. Plaintiff's drug and alcohol abuse continued. In 2002, Dr. Maksoud noted plaintiff's overuse of pain medication and refusal to try other types of pain medication. Tr. 445. Plaintiff also went to the hospital emergency room in a state of intoxication. Tr. 494. In August 2004, plaintiff told Dr. Conway, D.O., that he had no history of

drug use and that he only consumed two or three alcoholic beverages per month. Tr. 347. However, as the ALJ noted, plaintiff was involved in a physical altercation in September 2004 while "out drinking." Tr. 24, 424. Plaintiff also received his second citation for DUI in 2004. (Tr. 62). In November 2004, plaintiff told Dr. Leslie that he consumed alcohol occasionally and that he did not use illicit drugs. Tr. 459. That same month, plaintiff went to the emergency room because he was feeling ill. Tr. 1353. He tested positive for methamphetamines, cocaine, and marijuana. Tr. 423.

The evidence regarding plaintiff's pattern of lies and deception was extensive. From December 2006 to August 2007, plaintiff failed sixteen urinalysis screenings conducted by Nurse Practitioner Bell, testing positive for methamphetamines, cocaine, and marijuana multiple times. Tr. 31, 627, 629, 632, 636, 641, 642, 645, 646, 650, 653, 662, 665, 668, 671, 682, 688. In 2007, Dr. Beaver opined, "I think it is probable that he is manipulating us to get more pain meds, and do not see signs of an actual neurological deficit." Tr. 1114.

The second reason the ALJ gave for his credibility finding was that plaintiff exaggerated his pain complaints in order to obtain narcotics and disability benefits. Tr. 26, 31. In November 2005, Linina Ragan, ARNP, discovered that plaintiff had been "receiving multiple medications from multiple providers." Tr. 1219. She "confronted [plaintiff] about his use of the medications and frequently changing his story between providers (including ourselves, the ER, and his [primary care physician])." Tr. 1219. In addition, both Dr. Cotterell and Nurse Practitioner Bell refused to continue treating plaintiff after discovering that he had been lying to them in order to obtain "astronomically high levels of narcotics." Tr. 677, 993-94. During his emergency room visit in 2007, Dr. Beaver noted that plaintiff "turn[ed] continuously on the table," making it impossible to perform an MRI, but later he was "observed lying quietly on his back without

difficulty." Tr. 1114. Dr. Beaver concluded, "I think it is probable that he is manipulating us to get more pain meds, and do not see signs of an actual neurological deficit." *Id.* Furthermore, in November 2007, Dr. McCoy wrote, "I am very suspicious of ongoing drug seeking behavior or malingering in this patient. He made numerous requests for narcotic pain medications." Tr. 1109. Dr. McCoy also opined that plaintiff's complaints of severe pain were inconsistent with the objective medical evidence. *Id.* Accordingly, the ALJ's finding that plaintiff exaggerated complaints of pain in order to obtain narcotics and disability benefits is supported by substantial evidence.

Third, the ALJ found that the observations of a detective from the Office of the Inspector General contradicted plaintiff's claims of disabling pain that limited his ability to perform basic work functions. Tr. 30-31. In May 2005, Detective Brian Monteer wrote an investigation report, including his observations and interviews with plaintiff's neighbors. Tr. 56-62. One neighbor reported that she had seen him mowing the lawn on more than one occasion. Tr. 62. Another neighbor confirmed that plaintiff did yard work "all the time." Tr. 63. That same neighbor told Detective Monteer that he had seen plaintiff "walking to the end of the street to make dope deals." *Id.* When the detective asked the neighbor how he knew that plaintiff sold drugs, the neighbor explained that he had recently approached a young woman on the street that appeared to be "messed up." *Id.* When the neighbor asked if she needed assistance, the young woman admitted that she had just purchased methamphetamines from plaintiff. *Id.* Detective Monteer was preparing to leave, he saw plaintiff standing at the end of his driveway. *Id.* The detective began to walk toward plaintiff, and plaintiff "turned around suddenly; then ran through the garage up two steps and into the house." *Id.* According to Detective Monteer plaintiff "did not

display any physical limitations during his short run into the house." *Id*. The ALJ found Detective Monteer's account to be "very credible, logical, consistent with the overall evidence of record and deserving of great weight." Tr. 31.

In sum, the ALJ provided several clear and convincing reasons for rejecting plaintiff's testimony about the severity of his pain and the extent of his limitations. The court finds no error in the ALJ's analysis of plaintiff's testimony or allegations regarding the severity of his impairments.

(2) Plaintiff also argues the ALJ failed to properly consider the lay witness evidence provided by Jed Jacques, Kimberly Stiles, Michael J. Lenoir, and Matt Allen. Specifically, plaintiff claims these witnesses corroborated plaintiff's claim that he has difficulty walking, bending and holding items with his right hand. Plaintiff argues that the ALJ failed to address the lay witness evidence and failed to incorporate these limitations in his assessment of plaintiff's residual functional capacity.

Plaintiff submitted written statements from these four lay witnesses to support his claim for social security benefits. Tr. 259-62. Jed Jacques wrote that he often gives plaintiff rides to appointments, that plaintiff has difficulty picking up objects from the ground, and that plaintiff appears to walk with a limp. Tr. 259. Kimberly Stiles wrote that she had known plaintiff for one year, that she regularly gave him rides, and that he had difficulty holding objects with his right hand. Tr. 260. Michael Lenoir wrote that he had known plaintiff for ten years, that plaintiff walks with a limp, and that he does minor errands for plaintiff. Tr. 261. Matt Allen, plaintiff's son, wrote that his father had walked with a limp for eleven years, that he appears to have difficulty bending or picking up items, and that they no longer engage in activities like golfing

anymore. Tr. 262.  The ALJ did not specifically address these lay witness statements, but after reviewing the record, the court finds this failure was harmless error.

An ALJ's error is harmless if it is inconsequential to the ultimate nondisability determination.  Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1055 (9th Cir.2006).  This does not require a determination that the ALJ would have reached the same conclusion despite the error, merely a determination that the underlying decision is supported by substantial evidence and other legally valid reasons despite the error.  Carmickle v. Comm'r Soc. Sec. Admin., 533 F.3d 1155, 1162-63 (9th Cir. 2009).

Here the ALJ reviewed the medical evidence (discussed below) and found plaintiff retained the ability to perform light exertion with postural, manipulative and environmental non-exertional limitations.  Tr. 29.  The ALJ explained:

> Exertionally, the claimant can lift and carry 10 pounds frequently and 20 pounds occasionally.  He can sit, stand and walk for up to 6-hours in each activity (cumulatively, not continuously) in an 8-hour workday with normal breaks.  His push/pull exertional capacities are unlimited to the weight levels he can lift and carry, as set forth above.
>
> The claimant's postural non-exertional limitations are that he can climb stairs and equivalent ramps, but he is precluded from climbing ropes, ladders and scaffolding.  He can do occasional bending, balancing, stooping, kneeling, crouching and crawling.  His manipulative non-exertional limitation is that he must avoid "constant (i.e., more than frequent) forceful gripping with the right hand."  Because the claimant is on extraordinary levels of narcotic analgesics, I also find he has an environmental non-exertional limitation to avoid working around hazards such as working at unprotected heights or around machinery with exposed moving parts.

Tr. 33.  As noted above, plaintiff's son and Mr. Jacques wrote that plaintiff had difficulty bending and picking up objects from the ground.  Ms. Stiles observed that Plaintiff had difficulty holding objects with his right hand.  Consistent with these statements, the ALJ found that plaintiff was limited to occasional bending, balancing, stooping, kneeling, crouching, and

crawling and that he must avoid constant (i.e., more than frequent) forceful gripping with the right hand.  Accordingly, the limitations described in the four lay witness statements are accounted for in the ALJ's residual functional capacity finding. Thus, the four statements, even if credited, are irrelevant to the ALJ's ultimate disability determination.  It was harmless error when the ALJ neglected to discuss the lay witness evidence in his written decision.

(3) The ALJ properly considered the medical evidence, including the opinions of Dr. Cotterell and Nurse Bell.  Generally, the administrative law judge ("ALJ") will afford more weight to the opinions of treating medical professionals.  20 C.F.R. § 404.1527(d)(2).  An ALJ should "give more weight to opinions from [a claimant's] treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) and may bring a unique perspective ... that cannot be obtained from ... individual examinations." Id.

"When confronted with conflicting medical opinions, an ALJ need not accept a treating physician's opinion that is conclusory and brief and unsupported by clinical findings." Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001).  When an ALJ rejects the opinion of the treating physician in favor of a conflicting opinion, however, he must provide "specific and legitimate reasons supported by substantial evidence in the record for so doing." Lester v. Chater, 81 F.3d 821, 830 (9th Cir.1995) (internal quotation marks omitted); *see also* Reddick v. Chater, 157 F.3d 715, 722 (9th Cir.1998).  The uncontradicted opinion of either treating or examining physicians may only be rejected for "clear and convincing" reasons. Lester, 81 F.3d at 831.

Plaintiff argues the ALJ in this matter failed to properly consider the opinion of Dr. Cotterell, a treating physician, and Ms. Bell, an advanced registered nurse practitioner.  Here, the

medical evidence was contradicted and undermined by plaintiff's credibility (discussed above). The ALJ properly considered and rejected or limited the weight of the evidence.

Dr. Cotterell has treated plaintiff since 2003. Tr. 375-379, 421-439, 861-866, 993-1002, & 1007-1010. In July 2004, Dr. Cotterell diagnosed with an acute MI (myocardial infarction)/chronic angina, failed lumbar disc surgery, and herniated lumbar disc. Tr. 862. He further reported Mr. Allen has chronic radiculopathy and leg weakness. Tr. 862. Dr. Cotterell opined Mr. Allen's work level was less than sedentary level work or severely limited. Tr. 863. In a similar report of June 2005, Dr. Cotterell diagnosed lumbar DJD (degenerative joint disease), cervical DJD, and CAD (coronary artery disease). Tr. 378. Dr. Cotterell again opined Mr. Allen was limited to less than sedentary level work or severely limited. Tr. 378.

In December 2006, Dr. Cotterell discovered that plaintiff "was getting narcotics from us . . . but in addition to that, he was also getting multiple different prescriptions to supplement this from other sources." Tr. 993. Dr. Cotterell described the quantity of narcotics that plaintiff was receiving through multiple concurrent narcotics contracts as "astronomically high." Tr. 994. After Dr. Cotterell confronted plaintiff with this discovery, plaintiff stopped seeing Dr. Cotterell. Tr. 992-94.

The ALJ discussed Dr. Cotterell's assessment opinion several times in his assessment of the medical evidence. Tr. 22-26. With regard to Dr. Cotterell's assessment that plaintiff is "severely limited" the ALJ gave Dr. Cotterell's opinion "no weight." Tr. 25-26. The ALJ stated:

> I find the assessment is not for any 12-continuous months durational requirement. I also find the assessment contradicted by Dr. Cotterell's own December 2006 records, plus ARNP Nelson's report and further contradicted by consultative examiner, Dr. Measho's examination report of signs and findings dated October 12, 2007, (Exs. 23F/pgs 1-2; 25F/pg. 4; 28F/pg. 54 and 30F/pgs. 2-3.

Tr. 26.

The ALJ also explained that Dr. Cotterell's "severely limited" opinion was contradicted by the doctor's final treatment note documenting his discovery of plaintiff's deceptive drug-seeking behavior. Tr. 26. The ALJ found that "Dr. Cotterell's 'severely limited opinion' [was] the result of [plaintiff's] misrepresentations of his condition 'in an attempt to obtain narcotics and state/federal benefits.'" Tr. 26. The ALJ properly found that plaintiff's claims of severe pain were not credible, as discussed above. Accordingly, the ALJ properly gave no evidentiary weight to the three physical evaluation forms that reflected Plaintiff's discredited pain complaints. (Tr. 32). The ALJ opted to rely on other medical evidence in the record , including Dr. Veech, Dr. Price, Dr. Olson, Dr. Carvalho, Dr. Cabrales, and the state agency reviewing physician, Dr. Merrill.

With regard to Nurse Bell, plaintiff argues the ALJ ignored her assessment of plaintiff's impairments. A review of the record does not support plaintiff's argument that Nurse Bell's assessment supports plaintiff's allegation of disability. Nurse Bell completed a physical evaluation form in January 2007 in which she opined that plaintiff's physical limitations rendered him unable to perform even sedentary work. Tr. 1005. At the time she believed plaintiff's story. Tr. 636. However, as time passed and plaintiff's continued drug use came to light when he failed drug testing, Nurse Bell decided to "taper [him] off" the high levels of morphine sulphate she had been prescribing. Tr. 665. Nurse Practitioner Bell concluded that plaintiff wanted drugs more than he wanted treatment, and she told him that she "was no longer willing to see him anymore." Tr. 688. As the ALJ noted, she even contacted his next treatment provider to emphasize that she had ended her professional relationship with plaintiff because of his pervasive dishonesty and multiple failed urinalysis screenings. Tr. 26, 1081.

In sum, the ALJ properly weighed the conflicting medical evidence and provided a reasoned decision. The court notes it is required to examine the record as a whole, and it may not reweigh the evidence nor substitute its judgment for that of the ALJ or the Commissioner. Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002). When the evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld. Id.

(4)     The court finds no legal error in the ALJ's decision. The court also finds the ALJ's decision is properly supported by substantial evidence. Accordingly, the Court AFFIRMS the Social Security Administration's final decision.

DATED this 11th day of March, 2010.

/s/ J. Richard Creatura

J. Richard Creatura
United States Magistrate Judge